310  PEOPLE ex rel. BADISCHE FABRIK v. ROBERTS.

THIRD DEPARTMENT, DECEMBER TERM, 1896.        [Vol. 11.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. BADISCHE ANILIN AND SODA FABRIK, Relator, v. JAMES A. ROBERTS, Comptroller of the State of New York, Respondent.

*Taxation — a foreign corporation, a special partner in a limited copartnership in New York, is "doing business" therein.*

Where a corporation, conducting a business in Germany, becomes a special partner in a limited copartnership within the State of New York, contributes to the capital, draws out profits, and constitutes the limited copartnership its sole agent for the sale of its products in this country, the foreign corporation must be deemed to be "doing business" within the State of New York, and becomes liable to taxation here upon the value of the capital stock which it owns in the limited copartnership.

PARKER, P. J., and LANDON, J., dissented.

CERTIORARI issued out of the Supreme Court and attested on the 10th day of June, 1896, directed to James A. Roberts, Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany, all and singular, his proceedings relating to the assessment for taxation of Badische Anilin and Soda Fabrik, a corporation.

The relator is a corporation organized under the laws of the Grand Duchy of Baden in the Empire of Germany, and is engaged in the manufacture and sale of chemicals; it has its office and manufactory and carries on its business at Ludwigshafen in the Kingdom of Bavaria, where its corporate books and books of account and record are kept, and where all the meetings of its directors have been uniformly held. All its officers and directors are residents and citizens of Germany.

It is alleged by the relator in its petition, and admitted by the Comptroller in his return, that in 1879 the relator became a special partner in the limited copartnership of Pickhardt & Kuttroff in the city of New York. The articles of copartnership show that William Pickhardt and Adolph Kuttroff and the relator constituted such limited copartnership; the relator contributed the sum of $150,000 to the capital stock of such copartnership, and each of the other partners a like amount.

Both Pickhardt and Kuttroff were stockholders in the relator corporation, but sold out their stock some ten years ago.

Pickhardt & Kuttroff are engaged in the business of importing chemicals, and have the sole sale of the relator's products in this country; such products are brought into this country in the original packages and are sold in the same way; they are shipped to the estabishment of Pickhardt & Kuttroff, in the city of New York, and to any other part of the United States to which they may be directed by said firm. Said firm pays the relator for the goods so alleged to be purchased, by bills of exchange and remittances from New York. A yearly statement of the business of the copartnership is made to the relator.

In 1895 the relator drew the sum of $54,000 from the copartnership as its share of the profits as special partner; the average yearly profit received by the relator was the sum of $45,000.

In 1895 the Comptroller assessed the relator for taxes for sixteen years, ending November 1, 1895, with a penalty of ten per cent, amounting in all to the sum of $3,960, appraising the value of the capital stock of the relator employed in this State at the sum of $150,000.

Application was thereupon made to the Comptroller for a revision and readjustment of the account and tax against the relator, and a rehearing was had, and on the 13th day of May, 1896, the Comptroller rendered his decision, declining to make any revision or readjustment of the tax which had been imposed. Whereupon the relator obtained the writ of certiorari for the purpose of reviewing the decision of the Comptroller which is now before us.

*Michael H. Cardozo*, for the relator.

*T. E. Hancock*, *Attorney-General*, and *G. D. B. Hasbrouck*, *Deputy Attorney-General*, for the respondent.

HERRICK, J. :

The only question to be determined in this case is as to whether the relator is " doing business " within this State.

It is somewhat difficult to see how a foreign corporation can be engaged in " doing business " within this State without employing

312   PEOPLE ex rel. BADISCHE FABRIK v. ROBERTS.

THIRD DEPARTMENT, DECEMBER TERM, 1896.          [Vol. 11.

some part of its capital here, and, on the other hand, the fact that its capital is being employed in carrying on a business in this State is a very considerable element in determining whether the corporation which owns such capital is "doing business" in this State within the meaning of the law under which it is attempted to collect the tax here in question.

It is contended that by becoming a member of the copartnership the individuality of the partnership has been swallowed up in the new being or entity created, and that the capital invested is the capital of the copartnership, and the business conducted is not being conducted by the corporation but by the copartnership exclusively. I cannot acquiesce in the contention that members of a copartnership are not engaged in business, and that they are not doing the business which is being carried on in the name of the firm, by them and for their benefit. It is true that their contributions to the firm become swallowed up in the firm capital, but it is their property just the same; it belongs to them, and, instead of having a diminished interest, it is rather increased, if anything, by the rights that they have also obtained in the contributions of their copartners.

The business of the copartnership is their business; it is being conducted by them, either personally, or by their agents, and for their benefit, and it is, I think, a commonly recognized fact that a man who is a member of a copartnership is as much a business man, and is doing business as much, as though he were solely engaged in the same business for his sole benefit. His property invested is the subject of taxation; his interest is taxable separately. The partnership as such is not taxed.

It is said, however, that the fact that the relator is a special partner in a limited copartnership relieves him from taxation. It does not seem to me that that changes the rule a particle.

I do not think that a special partner in a limited copartnership is removed from the category of persons doing business.

While he is prohibited by our laws from active management, he is permitted to advise, and may buy, sell, purchase and transact other business for the copartnership, subject to approval by the general partners. (2 R. S. [9th ed.] 1848, § 17.)

He may bring an action for dissolution, and for an accounting.

PEOPLE ex rel. BADISCHE FABRIK *v.* ROBERTS.    313

App. Div.]    Third Department, December Term, 1896.

(*C. N. Bank* v. *Strauss,* 137 N. Y. 148; 2 R. S. [9th ed.] 1849, § 18.)

His contribution of capital to the firm cannot be regarded simply as an investment, as in the case of one purchasing stock in a corporation. In the case of a corporation there is a distinction made between the capital and the capital stock, and the shareholder, as such, is held not to be an owner of the capital, and a foreign corporation owning shares in a corporation in this State has been held to be not taxable for that reason. (*People* v. *American Bell Telephone Co.,* 117 N. Y. 241.)

The court there said: " In no legal sense can the business of a corporation be said to be that of its individual stockholders. It is true that they have an interest in the business carried on, and an influence in controlling its conduct; but they have created a legal entity to prosecute such business, make its contracts and be responsible for its obligations, and that entity is alone responsible to persons dealing with it for the conduct of such business."

Here, as we have seen, the identity of the special partner is not lost; he has an interest in the capital of the partnership property and business as such, and as between the partners themselves, he has the same rights that they have. (*Van Voorhis* v. *Webster,* 85 Hun, 591.)

It is only as to third persons that his rights or liabilities differ from those of the general partners.

His contribution to the copartnership is not simply a loan or investment; he is not in the position of a creditor, but of an owner; he is only a creditor in the sense that each partner is; that is, he has a right to the return of his capital after the debts are paid.

In *Hayes* v. *Bement* (3 Sandf. 394), under a statute similar to the present one, it was held that a special partner could not claim repayment of his contribution or of any part thereof until all the creditors of the firm had been paid, the court holding that the Legislature simply intended to put the special partner, so far as he is a creditor, upon precisely the same footing as if he were a general partner. This construction was approved of in *White* v. *Hackett* (20 N. Y. 178).

The Legislature many years ago recognized the fact that one who contributed to the capital stock of a limited copartnership and became

314    PEOPLE ex rel. BADISCHE FABRIK *v.* ROBERTS.

THIRD DEPARTMENT, DECEMBER·TERM, 1896.    [Vol. 11.

a special partner was engaged in doing business in this State. Section 1, chapter 37 of the Laws of 1855 (3 R. S. [9th ed.] 2138) reads as follows: "All persons and associations doing business in the State of New York as merchants, bankers or otherwise, *either as principals or partners, whether special or. otherwise*, and not residents of this State, shall be assessed and taxed on all sums invested in any manner in said business the same as if they were residents of this State." This was a provision for a property tax, and is simply referred to for the purpose of showing that the Legislature considered that persons so investing their capital were "doing business."

The case of *Commonwealth* v. *Standard Oil Company* (101 Penn. St. 119) was cited to us as authority for the contention of the relator, that it was not taxable. In that case it was held that the capital of the Standard Oil Company invested in corporations and limited copartnerships was not taxable. The court classed corporations and limited copartnerships together, for the reason that, in respect to taxation, it could see no distinction between them. The Taxing Acts of Pennsylvania treat them as identical. (See pp. 133–148.) And the court in that case further held that the shares of stock in a corporation were different from the capital stock, and that such shares were taxable at the domicile of the owner. And in that case the domicile of the Standard Oil Company, not being in the State of Pennsylvania, such shares were not taxable there. The court also held that the company was taxable on such of its capital as was invested in individual or general copartnerships in the State of Pennsylvania, thus necessarily disposing of the contention that its capital and individuality had become lost in the new capital and entity created by the formation of the copartnership.

In this State corporations and limited copartnerships are not treated alike for taxing purposes. The law imposes no tax upon copartnerships, either general or special, as such.

A corporation can only do business through its agents and representatives, and it seems to me that the relator, in placing its capital stock in the limited copartnership which I have described, whose general partners at the time of the organization of the copartnership, and for some years thereafter, were shareholders in the relator, and which limited copartnership had the sole disposition of the products

of the relator, thereby became engaged in doing business within this State through its agents, such limited copartnership, and the general partners thereof, who were carrying on business for it, with its capital and for its benefit.   The relator plainly comes within the spirit of the Taxing Act, which the Comptroller is endeavoring to enforce.   Its capital is located here, not as a loan or investment, but for the purpose of assisting in carrying on a business, in the profits of which, as such, the relator is to share.

Its capital has the benefit and protection of our laws, and in all respects is guarded and protected, and has all the facilities and advantages that can be obtained by a corporation located and doing business here with the same amount of capital.

The decision of the Comptroller should be affirmed, with fifty dollars costs and disbursements.

PUTNAM and MERWIN, JJ., concurred; PARKER, P. J., and LANDON, J., dissented.

LANDON, J. (dissenting):

A foreign corporation, in order to be subject to taxation under chapter 542, Laws of 1880, must not only employ a portion of its capital in this State, but must also be engaged in business here. (*People ex rel. Edison El. L. Co.* v. *Campbell*, 138 N. Y. 543; *People ex rel. Am. Con. & Dredging Co.* v. *Wemple*, 129 id. 558.) This foreign corporation does only one of these two things. It employs a portion of its capital here; that is, the portion it has embarked as special partner in the limited copartnership of Pickhardt & Kuttroff, but it cannot, therefore, be said that it is engaged in business here.   A person may employ his capital in many ways without doing business with it himself, and this is a way which the statute permits.   The general partners have sole dominion of the capital thus employed, and carry on whatever business is done with it.   The statute under which the limited partnership is organized excludes the special partner from all control of the business and commits it to the general partner.   (2 R. S. [9th ed.] 1844, § 3; id. 1848, § 17.)   He, therefore, cannot be a joint tenant of the capital, or capital stock or partnership property.   He simply has a right to his share of the profits, and, upon dissolution, to his proper share of the firm assets, after all firm liens upon them are discharged.

The fact that the foreign corporation sells its product to no other house in this country than that of the limited partnership is immaterial. (*Metropolitan Nat. Bank of New York v. Sirret*, 97 N. Y. 320.)

The determination of the Comptroller should be reversed, with fifty dollars costs, besides disbursements.

PARKER, P. J., concurred.

The decision of the Comptroller confirmed, with fifty dollars costs and disbursements.